**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENNETH WAYNE HOUSH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-17-883-STE** |
| ) | |
| **NANCY BERRYHILL, Acting** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Commissioner's decision is **REVERSED AND REMANDED** for an immediate award of benefits.

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, Administrative Law Judge (ALJ) Jodi B. Levine issued an unfavorable decision on April 19, 2013. (TR. 18-25). The Appeals Council (AC) denied Plaintiff's request for review on July 6, 2017. (TR. 1-7).

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of June 6, 2010. (TR. 20). At step two, the ALJ determined that Mr. Housh had the severe medically determinable impairments of posttraumatic degeneration of the shoulders and lumbar spine. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21). At step four, the ALJ concluded that Mr. Housh retained the residual functional capacity (RFC) to perform a full range of light work. (TR. 21).

The ALJ relied on vocational expert (VE) testimony to find that Plaintiff could not perform his past relevant work as an elevator repairer. (TR. 24). Relying upon the VE's testimony, Section 204.00 of the Medical-Vocational guidelines and Social Security Ruling (SSR) 85-15, the ALJ found that a finding of "not disabled" was directed by Medical-Vocational rules 202.21, 202.22, 202.14, and 202.15. (TR. 24-25).

## III.    ISSUES PRESENTED

On appeal, Plaintiff alleges that the ALJ (1) erred in finding that Plaintiff can perform a full range of light work, (2) failed to fully develop the record, (3) erred in relying

upon the grid rules at step five of the sequential evaluation, and (4) failed to properly evaluate Plaintiff's credibility.[1] (ECF No. 17:13-26).

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.  THE ALJ'S RFC EVALUATION

Plaintiff argues that the ALJ's determination that Plaintiff retains the ability to perform a full range of light work is not supported by substantial evidence. (ECF No. 17:13). Plaintiff contends that the ALJ "wholly ignored" evidence that was consistent with Plaintiff's complaints concerning the pain in his shoulders and his inability to reach overhead, and that despite finding Plaintiff's posttraumatic shoulder degeneration to be

---

[1] Plaintiff argues that the ALJ erred in her credibility analysis by 1) not considering Plaintiff's lack of financial resources, and 2) "selectively" choosing portions of the record to support her analysis, "while ignoring the context of those records, or their entire statements." (ECF No. 17:23-26). Because the Court addresses the substance of these arguments in Sections V and VI of this order, they will not be addressed again in a separate section.

a severe impairment, did not include any limitations related to this impairment in the RFC. *Id.* at 14.

Plaintiff argues that physical examinations "consistently" establish the existence of Plaintiff's shoulder limitations, and that three consultative examiners who examined the medical record at the request of the Social Security Administration opined that Plaintiff would be unable to reach above the chest level bilaterally. (ECF No. 17:15). Specifically, Plaintiff challenges the ALJ's assertion that his shoulder complaints are not supported by objective evidence, arguing that it is "unclear" precisely what evidence the ALJ is citing as support for this proposition. *Id.* at 14.

In support of her findings concerning Plaintiff's shoulder impairment, the ALJ cited treatment notes from January 2013, which allegedly contain "no report or statement of shoulder limitations." (TR. 23). The ALJ also argues that the movement restrictions related to Plaintiff's shoulders "are not seen on examination", that Plaintiff's shoulder condition improved after surgery, and that he did not seek medical attention for his shoulder complaints after January 2011. (TR. 21, 23).

The ALJ's findings concerning Plaintiff's shoulder impairment are not supported by substantial evidence. Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the

record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations, internal quotation marks, and brackets omitted).

To support her findings concerning Plaintiff's shoulder impairment, the ALJ relies almost exclusively on a visit Plaintiff made to his orthopedist in January 2013, during which Plaintiff complained of lower back pain. (TR. 24, 245). During this visit, Plaintiff's orthopedist, Jack Beller, MD, examined Plaintiff's back and prescribed Mobic and physical therapy to treat his lower back pain. (TR. 245).

The results of this 2013 office visit constitute the only specific medical evidence cited by the ALJ to support her findings concerning Plaintiff's shoulder. First, the ALJ's conclusion is based on a flawed logical premise – the fact that Plaintiff did not complain about shoulder pain during one visit in January 2013 does not necessarily mean that Plaintiff's shoulder problems ceased to exist, merely that he was experiencing an exacerbation of his lower back pain in early 2013. During the hearing, held in February 2013, Plaintiff testified to ongoing shoulder problems, including strength limitations, a reduced range of motion, and difficulty reaching above the chest level bilaterally. (TR. 38-40). Plaintiff continued to complain of chronic shoulder pain in August 2013. (TR. 11-12).

Further, in relying upon this one visit, the ALJ based her decision on a "scintilla" of evidence while ignoring the remaining medical records and opinion evidence. The ALJ argues, without support, that the shoulder restrictions Plaintiff complains of "are not seen on examination." (TR. 23). The ALJ's assertion is factually inaccurate, and her subsequent conclusions about Plaintiff's shoulder are not supported by substantial evidence. The ALJ

herself cites the results of a September 2011 consultative examination conducted by Michael Roberts, MD, which revealed that Plaintiff had reduced abduction, adduction, and forward elevation in his left shoulder. (TR. 238). Dr. Roberts' examination also revealed reduced muscle strength in the bilateral upper extremities and tenderness to palpitation in the bilateral shoulder joints. (TR. 242). The ALJ also argues that Plaintiff's shoulder condition improved after surgery, however treatment notes from January 2011, three months after Plaintiff's right shoulder surgery, revealed subacrimonial crepitus bilaterally, ongoing pain with overhead reaching, left shoulder rotator cuff tendonitis, and subacrimonial bursitis. (TR. 211).

The ALJ also opted not to weigh or evaluate in detail the available opinion evidence concerning Plaintiff's shoulder impairment. There are three pieces of opinion evidence in the record. In June 2011, J. Marks-Snelling, DO, assessed Plaintiff as being unable to reach above chest level bilaterally. (TR. 227-234). Subsequent reviews by agency medical consultants Kenneth Glass, MD and Walter Bell, MD, confirmed Dr. Marks-Snelling's assessment. (TR. 235-236, 243). While not discussing these opinions in detail, the ALJ dismissed all the opinions rendered by the State agency medical consultants, saying that "based on additional evidence" received at the hearing level, the Plaintiff is "less limited than was earlier thought" and that the bilateral reaching limitations assessed by the State agency physicians were "not evidenced in the medical record." (TR. 23). The ALJ does not discuss what evidence she relied upon to support this finding. The Commissioner argues that it is "reasonably discernable" that the ALJ was referring to Plaintiff's January 2013 visit with Dr. Beller. (ECF No. 19:9), *citing Davis v. Erdmann*, 607 F. 2d 917, 919

n.1 (10th Cir. 1979) ("[A] decision of less than ideal clarity [will be upheld] if the agency's path may reasonably be discerned." (citations omitted)). In this case, it is reasonable to conclude that the ALJ was relying on the results of Dr. Beller's examination, since this is the only specific medical evidence the ALJ references in connection with Plaintiff's shoulder impairment. However, while the ALJ's reasoning, and the evidentiary support for that reasoning, are reasonably discernable from the text of the hearing decision, the ALJ's findings concerning Plaintiff's shoulder impairment are overwhelmed by the other medical and opinion evidence in the record and are not supported by substantial evidence.

Plaintiff further argues that the logic behind the ALJ's RFC "defies reason" because she found that Plaintiff's shoulder impairment had no impact on Plaintiff's ability to work while simultaneously finding his shoulder degeneration to be a severe impairment. (ECF No. 17:14). A finding that an impairment is severe does not automatically require that certain, specific RFC limitations must accompany that impairment. *See Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014) (unpublished) ("The finding the impairments are severe does not address the degree of work-related functional limitations resulting from the impairments. An ALJ does not err by failing to match each step two impairment to a work-related limitation in the RFC. Rather, in developing the RFC the ALJ considers all of the medical and other evidence to determine whether the record supports the existence of physical, mental, sensory, and other limitations in the ability to perform work-related functions.").

In this case, the Commissioner does not argue that no RFC limitations should accompany Plaintiff's severe shoulder impairment. Instead, the Commissioner contends that by limiting Plaintiff to light work, the ALJ "did, in fact, impose some limitations on Plaintiffs ability to use his arms", since the ALJ found that Plaintiff could not use his arms to perform the heavy lifting required in his past work. (ECF No. 19:8). Plaintiff's argument is predicated on a misunderstanding about the difference between exertional and postural limitations. The lifting limitations implied by a light RFC are exertional in nature and are consistent with Plaintiff's allegations concerning his back pain. *See* 20 C.F.R. § 404.1567(b); SSR 83-10. However, Plaintiff's severe shoulder impairment would necessitate *non*-exertional, postural RFC limitations like those assessed by the State agency medical consultants. *See* SSR 85-15.

The ALJ's decision to exclude from the RFC the bilateral reaching limitations assessed by the State agency physicians is dispositive in this case. During the hearing, the following exchange took place when the ALJ questioned the VE concerning Plaintiff's reaching limitations:

> VE: Reaching is actually reaching with the assistance of the shoulder is how that is defined in the *DOT*. It's not like grasping something within arm's reach. You have to use assistance with the shoulder. But most of the light work in the *DOT* requires at least frequent reaching, and at the unskilled light work, and, really, all light work pretty much requires frequent or better reaching. There are a few jobs that do not, but that's what's going to happen, in general.
>
> ALJ: All right. So if we start limiting someone with the reaching, **that immediately is going to drop us down to sedentary unskilled work.**
>
> VE: That's correct. And, as a matter of note, sedentary, unskilled work has the same problem because all - - matter of fact, **I can say all sedentary,**

8

**unskilled work, with the exception of a job that no longer exists, surveillance systems monitor, does require at least frequent reaching.**

(TR. 45-46) (emphasis added). The VE was clear that if the bilateral reaching limitations assessed by the State agency consultants were included in the RFC, Plaintiff would be unable to perform either light or sedentary work. The ALJ's decision to exclude the bilateral reaching limitation from the RFC is not supported by substantial evidence, and the decision not to include this restriction in the hypothetical posed to the VE also constitutes an error. *See Decker v. Chater*, 86. F.3d 953, 955 (10th Cir. 1996) (Hypothetical questions posed to the VE must "reflect with precision all of [a claimant's] … impairments and limitations that are borne out by the evidentiary record.") (internal citations omitted).

Since the inclusion of this limitation would render Plaintiff incapable of performing any light or sedentary jobs, he is disabled pursuant to Social Security regulations and an immediate award of benefits is required.

## VI.   FAILURE TO DEVELOP THE RECORD

Plaintiff argues that in the hearing decision, the ALJ specifically discussed Plaintiff's lack of recent medical treatment as "one of the bases upon which she determined Plaintiff's limitations were not as severe as alleged" and that implicit in the ALJ's analysis is her "apparent belief that the record is not fully developed." (ECF No. 17:19-20). Plaintiff cites the hearing record, during which the ALJ considers ordering a "possible ortho CE." *Id.* at 20; (TR. 41, 48-49). Plaintiff argues that given the ALJ's statements, this case "appears to be one which warranted a consultative examination." *Id.*

Social Security regulations and Tenth Circuit case law establish that an ALJ has broad latitude in determining when to order a consultative examination. *See* 20 C.F.R. § 404.1519a(b); *see also Diaz v. Sec'y of Health & Human Servs.*, F.2d 774, 778 (10th Cir. 1990). An ALJ should order a consultative exam "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169; *see also* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

The ALJ's decision not to order a consultative examination does not, in and of itself, constitute a failure to develop the record if the ALJ otherwise felt there was sufficient evidence in the record upon which to formulate an RFC. In this case, it is the ALJ's evaluation of the existing evidence, rather than a failure to develop additional evidence, that is dispositive. Notably, at several points in the hearing decision, the ALJ discusses Plaintiff's lack of treatment or apparent decision to delay treatment as reasons why Plaintiff is not as limited as he alleged. (TR. 21, 23). However, during the hearing, Plaintiff testified that he was unable to proceed with surgery on his left shoulder or to complete treatment on his right shoulder because his insurance lapsed. (TR. 37, 39).

The Tenth Circuit has repeatedly held that an inability to pay may justify a Plaintiff's failure to pursue or seek treatment. *See Atkinson v. Astrue,* 389 Fed. Appx. 804, 809 (10th Cir. 2010), *citing Threet v. Barnhart*, 353 F.3d 1185, 1191 n. 7 (10th Cir. 2003)

("The lack of evidence of medical treatment does not constitute objective medical evidence of improvement. A decrease in the medical severity of an impairment sufficient to constitute medical improvement must be substantiated by changes in signs, symptoms, or laboratory findings … Instead of acknowledging that inability to pay may provide a justification for a claimant's failure to seek treatment, the ALJ concluded this evidence meant that Ms. Threet's pain was amenable to control. The record appears to indicate otherwise.").

Here, the ALJ appears to have inferred that Plaintiff's limited treatment history means that Plaintiff's impairments are not as limiting as he alleged. The ALJ made an assumption about why there is a lack of more recent medical treatment without considering, or addressing in the hearing decision, the possibility that Plaintiff's decision not to pursue additional shoulder surgery or other treatment was due to his inability to pay rather than a lack of complaints. Regardless of whether the ALJ found Plaintiff's statements concerning his lack of insurance credible or found that his inability to pay did not adequately explain his lack of treatment, the ALJ had an obligation to address Plaintiff's contentions and provide an adequate explanation for rejecting them when assessing the RFC. *See* SSR 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts … and non-medical evidence … The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."). By not doing so, ALJ has made an unsupported assumption about the severity of Plaintiff's impairments that further undermines the reasoning behind the RFC.

## VII.   EVALUATION OF GRID RULES

Plaintiff argues that the ALJ inappropriately relied upon the grid rules to find Plaintiff not disabled at step five of the sequential evaluation. (ECF No. 17:20-21). Specifically, Plaintiff argues that an ALJ cannot rely on the grid rules when an individual has additional non-exertional limitations that interfere with the ability to work. *Id.*, *citing Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1999) ("The grids should not be applied conclusively in a particular case ... unless the claimant could perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range … resort to the grids is particularly inappropriate when evaluating nonexertional limitations … In summary, an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level.").

Acceptance of Plaintiff's argument is contingent on the Court finding that the record supports the existence of additional, non-exertional limitations. Because substantial evidence supports the existence of bilateral reaching limitations, and because this prerequisite finding merits a finding of disability, the Court will not address this argument in greater detail.

## VIII.   THE APPROPRIATE REMEDY

It is within the Court's discretion to either remand this case to the Commissioner for further hearings or to award benefits. *Salazar v. Barnhart*, 468 F. 3d 615, 626 (10th

Cir. 2006), *citing Ragland v. Shalala*, 992 F. 2d, 1056, 1060 (10th Cir. 1993). Factors the Court considers in making this determination include the length of time the matter has been pending, and whether or not "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Id.* (internal citations omitted).

Plaintiff first filed his disability claim in May of 2011. (TR. 18). As of the date of this order, Plaintiff has been waiting seven years for a final disposition. Because the ALJ properly exercised her discretion in opting not to order a consultative examination, there is no additional fact finding on remand that would affect the outcome of this case. As such, the record has been fully and fairly developed, and establishes that: (1) the inclusion of a bilateral, overhead reaching restriction in the RFC is supported by substantial evidence, (2) the VE testified that the inclusion of such a restriction in the RFC would render Plaintiff incapable of performing any light or sedentary work, and (3) an inability to perform any light or sedentary work would direct a finding of disability. *Frey v. Bowen*, 816 F.2d 508, 518 (10th Cir. 1987) (holding that a reversal for an award of benefits was proper where the "record has been fully and fairly developed" and the evidence supported a disability finding).

The undersigned therefore finds that "further administrative proceedings would only further delay the appropriate determination and award of benefits," and orders that this case be reversed and remanded with an order to grant Plaintiff those benefits.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for an immediate award of benefits.

ENTERED on August 31, 2018.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE